**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:01-CR-0761-JOF |
| | : | |
| MARK V. BENVENISTE, | : | CIVIL ACTION NO. |
| | : | 1:05-CV-1074-JOF |
| Defendant. | : | |

**OPINION AND ORDER**

This matter is before the court on Petitioner's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [85-1].

**I.   Background**

Petitioner, Mark V. Benveniste, was convicted by a jury of bank fraud, in violation of 18 U.S.C. § 1344; false statements and/or reports, in violation of 18 U.S.C. § 1014; mail fraud, in violation of 18 U.S.C. § 1341; and wire fraud, in violation of 18 U.S.C. § 1343. He was sentenced to 63 months' imprisonment, five years' supervised release, $3,200 special assessment, and $5,507,256 in restitution (to be distributed equally among National Bank of Canada, Bank of America, and CIT Group/Business Credit, Inc.). In brief, the jury found that Petitioner, while acting as President and ten percent owner of Manatee Partners Limited, participated in a fraudulent scheme to sustain a line of credit that had been issued to Manatee

by multiple lending institutions. Petitioner was represented at trial and on appeal by Don Samuel.

At the conclusion of the presentation of evidence during trial, the court gathered counsel for a charge conference. For the false statements and reports counts, the parties proposed that the jury be charged that Petitioner could be found guilty only if the jury found by a reasonable doubt that Petitioner "made the false statement or report willfully and with intent to influence the action of the institution." Court of Appeals Slip op., at 4. The court never specifically discussed the content of what it intended to charge the jury on this issue. During closing arguments, Petitioner's counsel did not use the term "willfulness." *Id.* at 5. Petitioner's counsel told the jury the question was whether Petitioner "knowingly and purposefully submit[ted] false documents he knew were false." He also argued that Petitioner was entitled to a good faith defense because he did not know the documents were false. *Id.*

After the court excused the jury, the court informed the parties it intended to instruct the jury that for the false statements and reports counts, the jury need not find that Petitioner made the reports "willfully." *Id.* Petitioner's counsel objected and argued it believed the pattern instructions required "willful." The court overruled the objection, stating that the offense involved the "knowing" or "willful" commission and that this situation only concerned Petitioner's alleged "knowing" commission of the offense. *Id.* at 6.

The jury found Petitioner guilty on all counts presented to them. In the Presentence Report, Petitioner's base offense level was originally set at 6, with a 16-level enhancement

2

AO 72A
(Rev.8/82)

applied for an amount of loss between $20 and $40 million. After hearing from the parties, the court determined that the amount of loss was between $5 million and $10 million, thereby reducing the enhancement. The court also applied a two-level enhancement for abuse of a position of trust and for role in the offense.

Petitioner filed a direct appeal arguing: (1) the district court erred by imposing a two-level sentence enhancement under U.S.S.G. § 3B1.1(c) for leadership role in the offense, (2) the district court erred in imposing a two-level enhancement under U.S.S.G. § 3B1.3 for abusing a position of trust, and (3) the district court's jury instructions violated Federal Rule of Criminal Procedure 30. With respect to the jury instruction, Petitioner argued that the court's "act of altering the jury instructions following the charge conference and closing arguments violated his right to present a meaningful closing argument." *Id.* at 14.

The Court of Appeals for the Eleventh Circuit issued its order affirming Petitioner's sentence on September 28, 2004. The court noted that it required "substantial compliance" with Rule 30, and reversal would be warranted "'only if counsel's closing argument was prejudicially affected' or the party 'was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating or presenting arguments.'" *Id.* The court held that Petitioner was "not entitled to relief because he has failed to show that the court's error adversely affected his closing argument or prevented him from presenting his defense." *Id.* at 15. The court noted that Petitioner's counsel had not used the term "willfulness" in his entire closing argument. Further, Petitioner's counsel had always framed the issue as one of

3

"knowingly." Thus, "the court's substitution of the term 'knowingly' for the term 'willfully' in no way repudiated or impaired the effectiveness of defense counsel's closing argument." *Id.* Petitioner did not apply for a writ of certiorari with the United States Supreme Court.

On April 18, 2005, Petitioner filed the instant § 2255 motion proceeding *pro se*. In his motion, Petitioner argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 499 (2000); *Blakeley v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. ___ (2005), and *United States v. Fanfan*, 543 U.S. ___ (2005). He also contends that his counsel was ineffective for (1) failing to raise the Sixth Amendment sentencing issues, (2) failing properly to argue "wilfulness" to the jury, (3) allowing the court to set an arbitrary amount of restitution, and (4) failing properly to file a written motion for downward departure prior to Petitioner's sentencing hearing.

## II.  Discussion

"Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994); *see also Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). When a defendant fails to raise an available claim for relief on direct appeal and thus faces a procedural bar, his claim will not be considered in a § 2255 proceeding unless he can show cause for the default and actual prejudice suffered as a result of the alleged error. *Mills*, 36 F.3d at 1055. Alternatively, a defendant may overcome a procedural bar if he can show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Here, Petitioner does not contend that he is actually innocent, but does raise an ineffective assistance of counsel claim that may excuse his procedural default.

### A.  Ineffective Assistance of Counsel

To establish that his attorney rendered ineffective assistance of counsel, Petitioner must show both that the performance of his attorney was deficient and that such deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong of his ineffectiveness claim, Petitioner "must show that counsel's

5

representation fell below an objective standard of reasonableness." *Id.* at 688. Counsel is strongly presumed to have rendered adequate assistance, *id.* at 690, and the cases in which petitioners for post-conviction relief can properly prevail on ineffectiveness grounds are "few and far between." *See Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc). To satisfy the second prong, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694). The court remains free to dispose of the claim under either prong. *Oats v. Singletary*, 141 F.3d 1018, 1025 (11th Cir. 1998).

**B.**   ***Booker/Fanfan***

According to Petitioner, he had until January 28, 2005, to appeal his conviction to the United States Supreme Court. *Booker* was issued on January 11, 2005. Although Petitioner requested that his counsel file an appeal based on *Booker*, his counsel responded that it would not be worthwhile to do so because he had not raised the issue at sentencing. *See* Motion, at 2. Petitioner contends that had his counsel raised the "Sixth Amendment issues at sentencing and appeal, the appeal to the Supreme Court would most likely have resulted in Petitioner being resentenced." *Id.* Petitioner contends that loss amount, leadership role enhancement, and enhancement for an abuse of trust position were all findings made by the judge that increased his sentence and should have been presented to a jury.

6

The court notes, however, that in the instant § 2255, Petitioner raises both contentions that the Guidelines themselves were incorrectly applied, as well as a true *Booker* argument – under the Sixth Amendment, these enhancements cannot be applied by a judge under a mandatory Guideline scheme.  With respect to the applications themselves, the Court of Appeals found the district court correctly applied a two-level leadership role in the offense enhancement and abuse of position of trust enhancement.  As such, the court does not address the appropriateness of the application of those enhancements.

With respect to the constitutionality of Petitioner's sentence under *Booker*, assuming Petitioner is correct about the timing of his appeal and his counsel's statements, the court considers whether he suffered any prejudice from this alleged deficient performance. Looking at the situation in the best possible light for Petitioner, had he filed a direct appeal raising the *Booker* issues, it is likely that the Supreme Court would have granted the writ, vacated the appellate opinion, and remanded the case for further consideration in light of *Booker*.  See, *e.g.*, *Vanorden v. United States*, 543 U.S. ___ (2005); *United States v. Vanorden*, 414 F.3d 1321 (11th Cir. 2005) (describing these "GVR" cases).

Upon remand, the Eleventh Circuit would then have applied its growing jurisprudence on *Booker* issues.  As the law in this circuit stands now, the fact that Petitioner did not raise the *Booker* issues in his initial brief on direct appeal would be fatal, even though his case would have been returned from the Supreme Court.  See, *e.g.*, *United States v. Dockery*, 401 F.3d 1261 (11th Cir. 2005) (remand from Supreme Court does not mean that Eleventh Circuit

7

must construe *Booker* issue as having been raised in a timely fashion and applying "well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned"); *but see Vanorden*, 414 F.3d 1321 (11th Cir. 2005) (Tjoflat, J., dissenting) (noting that Eleventh Circuit is only circuit to have taken this position with respect to *Booker* cases GVR'd by the Supreme Court).

Thus, the question would become whether it was ineffective assistance of counsel for Petitioner's counsel to fail to recognize where *Blakely* was heading and raise a Sixth Amendment Sentencing Guideline issue at sentencing and at the time Petitioner filed his initial briefing in his direct appeal. The Eleventh Circuit has already answered that question in the negative. In *United States v. Ardley*, 273 F.3d 991 (11th Cir. 2001), the court discussed the prospect of ineffective assistance of counsel claims in the context of *Apprendi*. The court clearly stated in "this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *Id.* at 993 (collecting cases). "That rule applies even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it." *Id.* "Further, the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner." *Id.* Based on these unequivocal statements of the law, the court finds that Petitioner cannot show he suffered prejudice from his counsel's alleged failure to appeal to the United States Supreme Court after *Booker* was issued on January 11,

2005 or failure to raise a Sixth Amendment Sentencing Guideline issue at sentencing and on direct appeal prior to the issuance of *Booker*.

### C.   "Willfulness"

Petitioner was convicted of numerous counts of making false statements and/or reports, in violation of 18 U.S.C. § 1014. Section 1014 states: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of a [financial institution] upon any application . . . or loan, or any change or extension of any of the same . . . , shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." *Id.*

As described above, during trial, there were extended discussions concerning the charge to be given to the jury on this statute. After closing arguments, the court excused the jury for lunch and spoke with counsel. At that time, the court informed defense counsel that it did not believe that "willfully" was an element of § 1014. *See* Transcript, at 1459. Specifically, the court stated that § 1014 was in the disjunctive of "willfully" or "knowingly." The court noted that "this is a knowingly case." *Id.* at 1461. The court indicated it would charge the jury on "knowingly . . . he's got to know it's done with intent to mislead . . . ." *Id.*

After the court charged the jury, counsel made exceptions to the charge on the record. Mr. Samuel stated:

9

MR. SAMUEL: The only other thing, as we said, we believe for two reasons that "willfully" should have been in the 1014 counts. A, because it is in the statute, and B, because in the charge conference we said we were going to do it, it's in the pattern charge, the government submitted a pattern charge. I submitted a pattern charge pursuant to Rule 30. We had a charge conference, we had an agreement that the pattern charge would be given and after that argument it was left out in the charge.

And then after lunch when you said I'm going to – I'm not going to do "willful," I'm going to say "knowingly" made a false statement with intent to deceive. I said if that's what you are going to charge, I don't have that much of a quibble, but then you didn't do that either.

THE COURT: Yeah, I did.

MR. SAMUEL: You said "intent to influence." There is a huge difference between intent to influence an[d] intent to deceive. So now we've lost "willfully" and "intent to deceive" out of 1014. And it lacks the link between the falsity and the intent. I think what the jury needs to know in that regard you have to knowingly say something false, and that that false thing will change the bank's mind about something.

THE COURT: That's not the law.

MR. SAMUEL: There has to be a relationship between your knowledge of the falsity, and that that is what was going to influence them. You can't simply say, say something false like, you know, the sun rise this morning at 7:45 when, in fact, it was 7:50 and know –

THE COURT: I just got through reading the Supreme Court opinion again that said it ain't material, and what I said was that it's got to be done with the intent to influence.

10

> MR. SAMUEL:      The -- right.  Not the filing of the document.  Every loan application influences the bank.  What makes it a crime is where the false thing that you say is designed to influence them.
>
> THE COURT:       You are conceptually wrong, and therein now I understand.  1014 ensures – is not intended to protect the bank against fraud.  It is intended to protect against the – protect the integrity of the information that financial institutions got.  And if you say something to them and, you know, it's false, and you did it for the purpose of influencing them, then you violated the statute.  If you willfully overvalue collateral and you do it for the purposes of influencing them, you have violated the statute.

*Id.* at 1494-96.  As noted above, the Court of Appeals did not find any error under Rule 30 with respect to the manner in which the charge was given.

In his § 2255 motion, however, Petitioner avers that his counsel erred in not arguing "willfulness" in his closing arguments to the jury.  Petitioner contends that "[w]illfulness was a significant focus of Petitioner's defense in that Petitioner contends that he did not possess the requisite state of mind to commit the crimes." *See* Motion, at 2.  "Because counsel did not argue willfulness in closing in light of the faulty jury charge, the Court of Appeals clearly stated in its opinion that there was a lack of reliance on the concept of willfulness by counsel. Therefore, counsel failed to properly defend Petitioner." *Id.* at 3.  Petitioner contends that his theory of defense was "a complete lack of proof about his culpable state of mind – an element of the crime.  In fact, both the opening statement and the closing argument of Petitioner's counsel included numerous references to the lack of intent by Petitioner." *Id.*

11

at 15. Petitioner asserts that "willfulness" was an important element of the offenses for which he was convicted and requires proof that the defendant acted with knowledge that his conduct was illegal. *Id.* Petitioner then asserts that there "was a complete lack of proof at trial that Petitioner acted knowing that his conduct was criminal in any way, or that Petitioner possessed a bad purpose to disobey the law." *Id.*

The precise nature of this claim is unclear to the court. There is no dispute that the false report statute says "knowingly" or "willfully," thus, the court's instruction to the jury was not faulty. Even accepting Petitioner's allegation that the court "promised" the parties that the jury charge would contain the concept of "willfulness," Petitioner's counsel argued before the jury at closing that Petitioner did not "knowingly" commit the crime. It was not until after counsel's closing arguments that the court informed the parties that it would charge only on "knowingly." Thus, as the Court of Appeals noted, Petitioner was not prejudiced by the court's charging decision.

As Petitioner appears to recognize, the situation might have been different had Petitioner's counsel relied on the court's purported promise to instruct the jury on "willfulness" by arguing that concept to the jury. As such, Petitioner appears to contend in his § 2255 motion that his counsel should have argued "willfulness" to the jury so as to establish reliance in order for his Federal Rule of Criminal Procedure 30 claim to have succeeded on direct appeal. *See* Motion, at 16 ("[I]f counsel had properly argued the defense of willfulness as stressed throughout the trial, the jury instructions would be deemed incomplete, the

12

objection would have been proper, and the appellate decision would be different, i.e., Petitioner would have possibly been granted a new trial."). This argument does not have much logical appeal. It would be poor strategy, indeed, for a defense counsel to salt the record with an error in hopes of succeeding on direct appeal.

Considering Petitioner's argument more broadly, it may be that he is suggesting that his counsel's theory of defense was flawed. Perhaps Petitioner intended to argue that his counsel made a poor decision in deciding to present an "unknowing" defense as opposed to an "unwilling" defense. Petitioner, however, has not offered any reason why his counsel's decision to present an "unknowing" defense was a poor strategic decision. The court's review of the evidence presented at trial also does not indicate any reason why it would have been more beneficial to present a "willfulness" defense at trial. For the foregoing reasons, the court denies Petitioner's ineffective assistance of counsel claim with respect to the "willfulness" issue.

### D.     Restitution

Petitioner contends that his counsel was ineffective in failing to raise any restitution issues at sentencing and on appeal. Petitioner avers that he and his counsel spent many hours reviewing the facts associated with the loss amounts, as well as Petitioner's lack of financial resources and the needs of his family. *See* Motion, at 3. Petitioner argues that "[n]o evidence was presented at trial or sentencing regarding the amount of loss or Petitioner's inability to pay the arbitrarily decided restitution figure." *Id.* Petitioner asserts that the "judge used a

preponderance of the evidence standard to determine the amount of restitution. The jury never heard and consequently never addressed financial issues, loss amounts and alleged damages." *Id.* at 6.

Restitution and loss amount raise two separate issues when sentencing under the Guidelines. Restitution is a direct calculation of losses suffered by particular victims. The determination of loss amounts attributable to Petitioner is a calculation made to adjust Petitioner's offense level. *See* U.S.S.G. § 2F1.1(b)(1)(Q). With respect to the loss amounts, the court has addressed Petitioner's *Booker* issues above.[1]

---

[1] To the extent that it is still relevant, the calculation of loss amount was extremely complicated in the financial scheme found by the jury. The court agrees that Petitioner, his counsel, the Assistant United States Attorney, and the court expended great efforts in reaching a loss amount. *See* Motion, at 9. At sentencing, the court announced that it had spoken to defense and government counsel the day before and had noted that the Sentencing Guidelines provided wide ranges for loss amounts. *See* Transcript, at 1514. As such, differences in calculation of even $1 million might not affect the level under the Guidelines. The court indicated some initial problems with the calculation of the Probation Office but instructed the counsel to meet and try to come to some resolution on the loss amount. *Id.* at 1515. The parties did do this and agreed to a range of $5 million and $10 million. *Id.* at 1516. Petitioner's counsel informed the court that Petitioner agreed to that resolution, and the court ultimately accepted it. *Id.* at 1516-18. This reflected a change from the Probation Office's recommendation of loss amount between $20 million and $40 million. *See* PSR, ¶¶ 348, 349, 358.

In his § 2255 motion, Petitioner contends that "the damages and the amount of loss were nowhere near $5 million, and Petitioner and his counsel had ample proof of the actual loss which was not even reviewed by the trial judge, much less the trial jury. In fact, the judge flatly refused to even review the analysis prepared by Petitioner and his counsel." *See* Motion, at 10. Petitioner's own argument, therefore, shows that his counsel did attempt to persuade the court that the loss amount was not the more than $25 million suggested by the Probation Office. The fact that the court disagreed with Petitioner's proposed calculation and found that the $5 to $10 million figure was a more accurate statement of the loss does not

14

The court directed Petitioner to pay $5,507,256 in restitution. At sentencing, the district court imposed restitution with the condition that Petitioner pay 25% of his gross earnings in excess of $1,200 a month to restitution. *See* Transcript, at 1570. The court set the restitution as a special condition because it recognized that Petitioner would not be able to pay restitution out of the wages paid in prison. *Id.* at 1574.

The sum of $5,507,256 was taken from the civil litigation filed regarding the same transaction. *See National Bank of Canada v. MCI WorldCom, Inc.*, Civil Action No. 97-CV-3782-GET. Petitioner was a Defendant in that suit which was settled on April 12, 2000 with Petitioner, Harold Mann, and Walter Pavlo agreeing jointly and severally to pay $1,835,732 to each of National Bank of Canada, Bank of America, and CIT Group/Business Credit, Inc. *See* PSR, ¶¶ 352-55. Because the sum was taken from a settlement in which Petitioner voluntarily entered, the court finds that the sum was not calculated in an arbitrary manner. As such, there was a factual basis for the sum of restitution and *United States v. Dunlap*, 279 F.3d 965, 967 (11th Cir. 2002), is inapposite. Finally, Petitioner did not raise an objection to the sum of restitution at sentencing. *See* Transcript, at 1541.

Petitioner, however, contends that his counsel was ineffective for failing to argue at sentencing or on appeal that he did not have the financial ability to pay the ordered restitution. The provisions for restitution set out in the Victim and Witness Protection Act of 1982 were

---

mean that Petitioner's counsel was ineffective.

substantially amended by the Mandatory Victims Restitution Act of 1996. Under the MVRA, "the district court must order the payment of restitution in the full amount of the victim's loss without considering the defendant's ability to pay." *United States v. Siegel*, 153 F.3d 1256, 1258 (11th Cir. 1998) (citing 18 U.S.C. § 3664(f)(1)(A)). "Prior to the enactment of the MVRA, the district court was required to consider, among other factors, the defendant's ability to pay in fixing the amount of restitution to be made by a defendant." *Id.* In *Siegel*, the Eleventh Circuit determined that it would violate the Ex Post Facto Clause of the Constitution to apply the MVRA to any criminal conduct that occurred prior to April 24, 1996, the effective date of the MVRA. In *United States v. Futrell*, 209 F.3d 1286 (11th Cir. 2000), the court held that when a conspiracy began before the effective date of the MVRA but continued thereafter, the district court properly applied the MVRA to restitution considerations. *Id.* at 1290.

Here, Count 1 of Petitioner's indictment describes a fraudulent scheme that began around January 1, 1995 and concluded around December 31, 1997. The remaining counts of Petitioner's indictment (2-31, and 33) allege conduct that occurred in 1997. Under *Futrell*, the court properly applied the mandatory provisions of the MVRA and, thus, was not permitted to consider Petitioner's ability to pay. For these reasons, Petitioner cannot show his counsel was ineffective is failing to argue ability to pay with respect to restitution.

### E. Downward Departure

16

Petitioner contends his counsel was ineffective in failing to file a motion for downward departure. "Counsel was aware that Petitioner was a first-time offender, had a significant role in the community and was an active and involved father of four young children. Yet, counsel's failure to document the justification for downward departure through a motion properly filed and argued with the court prevented the judge from having the necessary facts which justified downward departure from the otherwise rigid Sentencing Guidelines." *See* Motion, at 3.

However, the record shows that Petitioner's counsel did, indeed, seek a downward departure. *See* PSR, at 87-88 (noting Defendant seeks downward departure based on fact that fraud loss calculation overstates culpable conduct by Defendant, Defendant did not benefit from conduct, Defendant has endured seven years of civil and criminal litigation, and Defendant enjoys substantial support from the community). The court considered Petitioner's request for a downward departure. *See* Transcript, at 1542-57. Petitioner's counsel and counsel for the Government argued at great length concerning the appropriateness of departure. *Id.* The court discussed in detail its understanding of the departure request made by Petitioner's counsel, including the community support marshaled by Petitioner and his family circumstances. *Id.* at 1554-57. The court ultimately did not grant Petitioner's request, but Petitioner cannot maintain an ineffective assistance of counsel claim simply due to the fact that the court disagreed with Petitioner's counsel.

17

AO 72A
(Rev.8/82)

In sum, the court finds that Petitioner cannot show he suffered any prejudice from his counsel's failure to appeal on *Booker* issues to the Supreme Court or raise Sixth Amendment claims in the initial briefing of his direct appeal.  Petitioner also cannot show his counsel provided ineffective assistance with respect to the "willfulness," restitution, and downward departure issues.

AO 72A
(Rev.8/82)



### III.     Conclusion

For the foregoing reasons, the court DENIES Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [85-1].

**IT IS SO ORDERED** this 31st day of January 2006.

    s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)